UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KENT KEAN,                          §
                                    §
        Plaintiff,                  §
                                    §
V.                                  §        CIVIL ACTION NO. 3:12-CV-1159-B
                                    §
JACK HENRY & ASSOCIATES, INC.,      §
                                    §
        Defendant.                  §

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is a Motion for Summary Judgment (doc. 32), filed on April 22, 2013 by

Defendant Jack Henry & Associates, Inc. For the reasons that follow, the Court **GRANTS**

Defendant's Motion.

I.

BACKGROUND

In this action, Plaintiff Kent Kean has sued his former employer, Defendant Jack Henry &

Associates, Inc., for alleged violations of the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. §§ 621 *et seq.* Doc. 1, Compl. In October 1999, Plaintiff became a business analyst for

Defendant, which is involved in software development. Doc. 32-2, Br. at 3; doc. 32-16, App. at 200

(Kean Dep.). During his employment, Plaintiff received promotions and ultimately became a Senior

Development Manager. Doc. 32-16, App. at 200-04. Defendant's Director of Software Engineering,

Ron Moses, was Plaintiff's supervisor beginning in 2007. Doc. 32-2, Br. at 3. Moses' supervisor was

Chief Technology Officer Mark Forbis. *Id.* at 5. It appears that Defendant's business operates through

development groups, each of which creates projects that ultimately become software products. Senior Development Managers like Plaintiff lead these development groups, and Moses and Forbis oversee the managers.

In 2010, Plaintiff was responsible for five development groups and nine products. Doc. 48, Resp. at 2. Defendant alleges (and Plaintiff disputes) that one of Plaintiff's products, OnBoard, was not succeeding as Defendant thought it should and had been problematic as early as 2008. Doc. 32-2, Br. at 3-9; doc. 32-4, App. at 2-3 (Forbis Aff.). Plaintiff, Moses, and Forbis were all allegedly chastised for failing to meet the OnBoard objectives. Doc. 32-2, Br. at 4-5. In August 2010,[1] Defendant assigned two of Plaintiff's development groups and three of his products to Aaron Blevins, aged 35. Doc. 1, Compl. ¶ 9; doc. 48, Resp. at 2; doc. 49, App. at 1 (Kean Aff.), 52 (Blevins Dep., stating birth date); doc. 32-2, Br. at 6. Defendant alleges (and Plaintiff disputes) that it reassigned some of Plaintiff's products so that Plaintiff could focus more of his time on OnBoard and some of his other major products, ArgoKeys, StreamLine, Vertex, and Core Director Teller. Doc. 32-2, Br. at 6.

In May 2011, Defendant placed Plaintiff on a performance improvement plan for his shortcomings with respect to OnBoard. Doc. 1, Compl. ¶ 14; doc. 49, App. at 2 (Kean Aff.). Defendant then promoted Scott Harvey, age 42, to a position of senior manager and assigned him two of Plaintiff's three remaining development groups, including OnBoard. Doc. 1, Compl. ¶ 11; doc. 48, Resp. at 2; doc. 49, App. at 1-2 (Kean Aff.), 47 (Harvey Dep., stating birth year). At this point,

---

[1] Plaintiff provides varying dates of February 2010 and August 2010 for the assignment of two development groups to Blevins. *See* doc. 1, Compl. ¶ 9; doc. 48, Resp. at 2; doc. 49, App. at 1 (Kean Aff.). Defendant states that the date was August 2010. Doc. 32-2, Br. at 6.

the number of people reporting to Plaintiff went from sixty to six. Doc. 1, Compl. ¶ 13; doc. 48, Resp. at 2; doc. 49, App. at 1-2 (Kean Aff.). Plaintiff continued to manage the Vertex and Core Director Teller products. Doc. 32-2, Br. at 11-12. Defendant alleged that it also planned for Plaintiff to co-manage its new Vertex Xperience product with Ben Morgan, age 32, though Plaintiff disputes that this was the plan. Doc. 48, Resp. at 7; doc. 49, App. at 4 (Kean. Aff.), 32 (Forbis Dep.), 62 (Morgan Dep., stating birth year); doc. 32-2, Br. at 12. On September 6, 2011, Plaintiff met with Moran and Moses to discuss planning for Vertex Xperience. Doc. 32-2, Br. at 16. At that meeting, Plaintiff suggested that employees working on Vertex Xperience should report to Moran only and not Plaintiff and that Plaintiff "wasn't sure where that would leave him." *Id.*; doc. 32-11, App. at 71-72 (Moran Dep.). Following Plaintiff's suggestion, Moses agreed that no senior manager was needed on the Vertex Xperience product. Doc. 32-2, Br. at 16; doc. 32-17, App. at 296-97 (Moses Dep.). Moses also determined that the company could not justify having a Senior Development Manager that was only responsible for two products. Doc. 32-5, App. at 18 (Moses Aff.).

On November 6, 2011 Plaintiff was terminated at the age of 54.[2] Doc. 48, Resp. at 21; doc. 49, App. at 13 (Kean Aff.). Moses alleged to be the primary decision maker in Plaintiff's termination, and Forbis approved the decision. Doc. 49, App. at 27 (Moses Dep.). Moses, Forbis, and Human Resources representative Faith Westby stated that the reason for Plaintiff's termination was a reduction in force due to the lack of need for an extra Senior Development Manager and not due to performance issues. Doc. 49, App. at 17 (Westby Dep.), 27 (Moses Dep.), 34 (Forbis Dep.). Upon his termination, Plaintiff's Core Director Teller product was reassigned to Clint Radar, age 46, and

---

[2]Plaintiff ended work on September 23, 2011, though his official date of separation was November 6. Doc. 48, Resp. at 21; doc. 49, App. at 13 (Kean Aff.).

his Vertex product was reassigned to Michael Greenhaw, age 47. Doc. 48, Resp. at 7; doc. 49, App. at 28 (Moses Dep., explaining reassignments), 38 (Greenhaw Dep., stating birth year), 57 (Rader Dep., stating birth year).

Plaintiff filed his Complaint (doc. 1) against Defendant on April 14, 2012. The Complaint alleged two violations of the ADEA: first, that Defendant took adverse employment action against Plaintiff when it reassigned some of Plaintiff's projects during his employment because of his age and, second, that Defendant unlawfully terminated Plaintiff due to his age. Doc. 1, Compl. ¶¶ 23-29. The Complaint seeks damages in the form of lost wages and benefits and liquidated damages, injunctive and declaratory relief in the form of reinstatement and a declaration that Defendant is in violation of the ADEA, and attorney's fees and costs. *Id.* ¶¶ 29-32.

On May 22, 2013, Defendant filed a Motion for Summary Judgment (doc. 32). Plaintiff requested that the Court deny summary judgment under Rule 56(d) because Plaintiff alleged that he had not had adequate time to review the discovery offered by Defendant. Doc. 35, Resp. The Court denied Plaintiff's request but gave him an extended period of time to continue reviewing the discovery and to respond to the merits of the summary judgment motion. Doc. 37, Order. The Court later denied Plaintiff's ongoing objection that he had not had enough time to review discovery and his request that Defendant be required to produce additional discovery, including an unredacted version of a memo. Doc. 40, Order. Plaintiff then moved for an additional extension in responding to the summary judgment motion, which the Court granted. Doc. 44, Order. Plaintiff has now responded (doc. 48) to the merits of the summary judgment motion, and Defendant filed a Reply (doc. 61), so the Motion is ripe for review. The Court concludes that Plaintiff has had more than adequate time to conduct and review the requested discovery, so it is proper for the Court to review

the Motion on the merits.[3] The Court has original federal jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II.

### LEGAL STANDARDS

The purpose of summary judgment is "to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990). Accordingly, Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The summary judgment movant bears the burden of demonstrating the absence of a genuine issue of material fact. *Latimer v. SmithKline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id.*

---

[3]In his Response, Plaintiff continues his objection that he has not had adequate time to prepare for summary judgment, despite the fact that this case has been litigated since April 2012, and that Defendant should be compelled to produce additional discovery and the unredacted memo. *See* doc. 48, Resp. at 23-24. The Court again **DENIES** Plaintiff's objection to his ability to review discovery and **DENIES** his request to reconsider the Order on the Motion to Compel. The Court also notes that the only specific piece of evidence that Plaintiff points to in his Response as needing further review and deposition, *see* doc. 48, Resp. at 17 n.5, relates to an argument that the Court does not consider in addressing the merits of the claims. *See infra.*

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Id.* Nevertheless, a non-movant may not simply rely on the Court to sift through the record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant does provide must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This evidence must be such that a jury could reasonably base a verdict in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

Plaintiff raises a single cause of action under the ADEA, 29 U.S.C. § 623(a), alleging that (1) Defendant discriminated against him during his employment by reassigning his projects to younger employees, and (2) Defendant terminated him because of his age and replaced him with substantially younger persons. Doc. 1, Compl. ¶¶ 23-29; doc. 48, Resp. at 4-7. Defendant moves for summary judgment on these claims, arguing that Plaintiff has not alleged a *prima facie* claim under the ADEA and, in any event, that Defendant has a legitimate, nondiscriminatory reason for terminating Plaintiff. Doc. 32, Mot. Plaintiff opposes Defendant's motion and contends that Defendant's reasons for terminating him are pretext.

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a); *Dees v. United Rentals N. Am., Inc.*, No. 12-30477, 2013 U.S. App. LEXIS 40, at *4 (5th Cir. Jan. 2, 2013). "To establish an ADEA claim, a plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the but-for cause of the challenged employer decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citing *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009)). Where, as here, the plaintiff does not allege that he has direct evidence of age discrimination, his ADEA claim is analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *Dees*, 2013 U.S. App. LEXIS 40, at *4; doc. 48, Resp. at 22 ("Kean does not claim any direct evidence."). Under *McDonnell Douglas*, 411 U.S. 792, 802 (1973), a plaintiff must initially present evidence of a *prima facie* case of discrimination. *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003). To do this, Plaintiff must show that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and 4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Horton v. CCA Props. of Am., LLC*, No. 12-20404, 2013 U.S. App. LEXIS 9358, at *10 (5th Cir. May 8, 2013) (citing *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010)); *Dees*, 2013 U.S. App. LEXIS 40, at *4-5.

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). The defendant's burden, however, is only one of "production, not persuasion, and involves no credibility assessment." *Jinks v. Advanced Prot. Sys., Inc.*, 162 F. Supp.

2d 542, 546 (N.D. Tex. 2001). If the defendant meets its burden of advancing a nondiscriminatory explanation, the plaintiff must offer evidence of pretext. *Jackson*, 602 F.3d at 378. Pretext is shown through evidence of disparate treatment or through evidence that the employer's reasons are false. *Moss*, 610 F.3d at 922. Under the ADEA, it is not enough to show that discrimination is a motivating factor, rather, the plaintiff's age must be the "but for" cause of the adverse employment action. *Dees*, 2013 U.S. App. LEXIS 40, at *6.

A.      *Prima Facie Case*

The Court begins with its analysis of Plaintiff's *prima facie* case of age discrimination. Plaintiff raises two separate claims of age discrimination. *See* doc. 1, Compl. ¶¶ 23-29; doc. 48, Resp. at 4-7. Plaintiff's first ADEA claim alleges that he suffered adverse employment action in the form of Defendant's reassignment of some of his projects to younger coworkers during Plaintiff's employment (the "reassignment claim"). Plaintiff's second claim alleges that he was terminated by Defendant due to his age, as allegedly evidenced by the fact that Plaintiff's projects were reassigned to two younger coworkers after he was discharged (the "termination claim"). Defendant does not appear to dispute that Plaintiff was within the protected class of individuals over the age of forty (he was 54 years old at the time of his termination) or that he was qualified for his position. Instead, Defendant moves for summary judgment on the basis that the reassignment of Plaintiff's duties during his employment does not constitute an adverse employment action sufficient to state a separate claim of discrimination under the ADEA and that Plaintiff was not replaced by younger individuals upon his termination.

i. <u>Reassignment Claim</u>

Plaintiff argues that he has asserted a *prima facie* case of age discrimination because the reassignment of some of his projects prior to his termination in and of itself constituted adverse employment action sufficient to state a claim under the ADEA. Doc. 48, Resp. at 4. Specifically, Plaintiff explains that several of his development groups and projects were reassigned to Blevins and Harvey, both of whom were younger than Plaintiff. *Id.* at 2, 6-7. Defendant moves for summary judgment on the reassignment claim on the basis that a reassignment of duties is not an adverse employment action and thus fails to establish a *prima facie* case under the ADEA. Doc. 32-2, Br. at 20-21.

"The law is well established that adverse employment actions involve ultimate employment decisions relating to discharge, demotion, hiring, refusal to promote, granting leave, compensation, and reprimand. Decisions that do not affect job duties, pay or benefits are not considered an adverse employment action for purposes of Title VII." *McCullar v. Methodist Hosp. of Dallas*, No. 3:10-CV-1895-K, 2012 U.S. Dist. LEXIS 31461, at *19 (N.D. Tex. Mar. 8, 2012) (evaluating race discrimination claim and citing *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997), and *Bouvier v. Grumman Ship Sys.*, Inc., 350 F. App'x 917, 922 (5th Cir. 2009)); *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 531-32, 532 n.2 (5th Cir. 2003) (providing a detailed examination of the types of actions qualifying and not qualifying as adverse employment actions). The Fifth Circuit has clarified that "the loss of some job responsibilities does not qualify as an ultimate employment decision." *Williams v. U.S. Dep't of the Navy*, 149 F. App'x 264, 269-70 (5th Cir. 2005) (finding no "ultimate [adverse] employment decisions" where the defendant employer reassigned 20% of the plaintiff's workload to a new coworker and relocated the employee for one week); *Watts v. Kroger*

*Co.*, 170 F.3d 505, 512 (5th Cir. 1999) (change in schedule and assignment of new tasks are not adverse employment actions where they do not affect pay); *Simmons v. Navy Fed. Credit Union*, No. C-10-14, 2011 U.S. Dist. LEXIS 56371, at *11-13 (S.D. Tex. May 26, 2011)(holding that reassignment of job duties to younger employees was insufficient to state an adverse employment action under the ADEA absent a corresponding demotion or reduction in benefits); *Bell v. Raytheon Co.*, No. 3:08-CV-0702-G, 2009 U.S. Dist. LEXIS 67016, at *28-30 (N.D. Tex. July 31, 2009) (finding no adverse employment action under ADEA where plaintiff alleged that his supervisory roles on several projects were transferred to other employees); *Roberts v. Unitrin Specialty Lines Ins. Co.*, No. 3:06-CV-0380-B, 2008 U.S. Dist. LEXIS 62134, at *24 (N.D. Tex. Aug. 13, 2008) ("To the extent that Roberts argues that removal from one project constitutes an adverse employment action, this argument has no merit.").

Defendant provides summary judgment evidence that, although some of Plaintiff's development groups and products were reassigned during his employment, Plaintiff remained in the same position without any reduction in pay. Doc. 32-2, Br. at 20; doc. 32-5, Ex. B. at 16 (Moses Aff.); Doc. 32-16, Ex. M at 203-04 (Kean Dep.). Plaintiff does not dispute these facts. As noted above, authority from this circuit holds that the reassignment of several of Plaintiff's projects during his employment does not constitute an adverse employment decision. Because a reassignment of duties does not, by itself, support a *prima facie* case under the ADEA, the Court **GRANTS** summary judgment to Defendant on the reassignment claim. The Court need not address Defendant's other arguments for dismissal on this claim, nor must the Court continue with the analysis under the *McDonnell Douglas* framework with respect to the reassignment claim. The Court will, however, consider the facts of the reassignment of Plaintiff's duties during Plaintiff's employment to the extent

those facts are relevant to Plaintiff's ADEA termination claim, *infra*.

ii.    Termination Claim

The Court next turns to Plaintiff's claim under the ADEA alleging that Plaintiff was unlawfully terminated based on his age. Plaintiff bases his ADEA termination theory on the fact that he was replaced by two younger employees, Rader and Greenhaw, after his termination. The parties agree that each of these individuals are younger than Plaintiff. The parties also agree that each of these individuals had been employed with Defendant prior to Plaintiff's termination.

Defendant points to several cases to demonstrate that Plaintiff cannot allege a *prima facie* claim of discrimination because he was not "replaced" by a younger individual. Doc. 32-2, Br. at 21-22; doc. 61, Resp. at 3-4. Instead, Defendant asserts that Plaintiff's position was eliminated and his work assignments were distributed to coworkers, which it contends is not a violation of the ADEA. The Fifth Circuit has explained that "applicable case law holds that when an employee's position has been eliminated and the job duties reassigned to existing employees, that employee has not been replaced." *Dulin v. Dover Elevator Co.*, 139 F.3d 898, at *2-3 (5th Cir. 1998) (unpublished) (citing *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 423 (1st Cir. 1996), *Barnes v. GenCorp., Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990), and *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 150 (5th Cir. 1995)); *see also Rexses v. The Goodyear Tire & Rubber Co.*, 401 F. App'x 866, 868 (5th Cir. 2010) ("[A] terminated employee has not been 'replaced' when his position is eliminated and his former duties are distributed among other co-workers."). In *Dulin*, the Court found no age discrimination where the employer terminated the plaintiff and reassigned all of his duties between two existing employees, who did not receive a promotion or pay raise. 139 F.3d 898, at *1. District courts within this circuit have similarly, consistently held that "[w]hen a terminated employee's job

duties are distributed among other employees after termination, those employees do not 'replace' the terminated employee in the context of a *prima facie* case of discrimination." *Horak v. Glazer's Wholesale Drug Co.*, No. 3:05-CV-901-K, 2006 U.S. Dist. LEXIS 49510, at *11-12 (N.D. Tex. July 18, 2006), *aff'd*, No. 06-1854, 2007 U.S. App. LEXIS 5222 (5th Cir. Mar. 6, 2007) (skipping *prima facie* analysis and deciding issue on lack of pretext); *Ellini v. Ameriprise Fin., Inc.*, 881 F. Supp. 2d 813, 820 (S.D. Tex. 2012) (citing cases and holding that reassignment of job duties does not constitute replacement); *Martin v. Bayland Inc.*, 403 F. Supp. 2d 578, 583 (S.D. Tex. 2005) (citing cases), *aff'd Martin v. Bayland Inc.*, 181 F. App'x 422 (5th Cir. 2006) (skipping *prima facie* analysis and deciding issue on lack of pretext); *Dulin v. Dover Elevator Co.*, No. 3:96CV15-B-A, 1997 U.S. Dist. LEXIS 9860, at *4 (N.D. Miss. Feb. 3, 1997) ("A person is not replaced when another employee is assigned to perform the plaintiff's duties or when work is redistributed among other existing employees." (citing cases)), *aff'd* 139 F.3d 898 (see above); *Sellers v. BNSF Ry. Co.*, No. 1:11-CV-190, 2013 U.S. Dist. LEXIS 37324, at *36 n.10 (E.D. Tex. Mar. 18, 2013) ("Reassignment or absorption of a terminated employee's job duties does not constitute 'replacement' for purposes of establishing a *prima facie* case of discrimination under a discriminatory discharge theory."); *Guerrero v. Preston*, No. H-08-2412, 2009 U.S. Dist. LEXIS 72946, at *11-13 (S.D. Tex. Aug. 18, 2009) (citing cases).

Despite this strong authority holding that job elimination and duty reassignment does not qualify as termination and replacement, Plaintiff provides several cases demonstrating the opposite. In one recent unpublished race-discrimination case, the Fifth Circuit noted in a footnote in that, where only a single job was eliminated, as opposed to a company-wide reduction-in-force, a plaintiff may establish a *prima facie* case of discrimination even where his position was eliminated and the job duties were absorbed by other existing employees. *See Howard v. UPS, Inc.*, 447 F. App'x 626, 629

n.2 (5th Cir. 2011). *Howard* might be distinguishable on the basis that all of the employee's duties were reassigned to a single employee, thereby making the situation more akin to a replacement rather than a job elimination, but the language of *Howard* is nonetheless clear. Furthermore, in *Thornbrough v. Columbus & G.R. Co.*, the Fifth Circuit found a *prima facie* case of age discrimination where the plaintiff alleged only that "several younger, allegedly less well-qualified employees were retained during the [employer's] reduction-in-force, and that, at the time of his discharge, two younger, allegedly less well-qualified employees were hired." 760 F.2d 633, 643-44 (5th Cir. 1985), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 512-13 (1993). The plaintiff *Thornbrough* was replaced by two new hires, which could make that case distinguishable from a case like the one *sub judice* where Plaintiff's duties were reassigned among current employees. Finally, Plaintiff also points to an unpublished Fifth Circuit case holding that the plaintiff established a *prima facie* ADEA claim despite the employer's argument that he position was eliminated and her duties were divided into three new positions, because "[a] restructuring of [the plaintiff's] position could have been accomplished without firing her." *Young v. Harris Health Care, Inc.*, 226 F.3d 643, at *3 (5th Cir. 2000) (unpublished). Although the Fifth Circuit has consistently rejected the theory that a court may second-guess an employer's business strategy and judgment, *see Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988), which appears to be exactly what the court did in *Young*, the decision provides some support for Plaintiff's position. Defendant did not respond to the authoritativeness of these cases, but merely pointed to its own caselaw as provided above. As such, the Court does not have the benefit of Defendant's position on how the cases cited by Plaintiff interact with the unpublished appellate decisions and the district court decisions holding the opposite.

Given the fact that there is some authoritative support for Plaintiff's theory and given the low burden on Plaintiff in demonstrating the existence of a *prima facie* case, the Court *assumes without deciding* that Plaintiff has met his *prima facie* burden. The Court thus continues to analyze Plaintiff's ADEA termination claim under the *McDonnell Douglas* burden-shifting framework.

B.      *Legitimate, Nondiscriminatory Reason*

Assuming that Plaintiff has met his *prima facie* burden with respect to his ADEA termination claim, Defendant must articulate and produce evidence showing that it had a legitimate and nondiscriminatory reason for terminating Plaintiff. *See Berquist*, 500 F.3d at 349 ; *Jinks*, 162 F. Supp. 2d at 546.

Defendant asserts that Plaintiff was terminated for the legitimate and nondiscriminatory reason that Defendant underwent a reorganization and reduction-in-force.[4] Doc. 32-2, Br. at 23. Defendant points to Moses' affidavit as summary judgment evidence that Moses felt he "could not justify having a Senior Manager only responsible for the standard Teller enhancement releases of Vertex and Core Director Teller" to whom only six people reported. Doc. 32-5, App. at 18-19 (Moses Aff.). Moses decided to reorganize Plaintiff's department and eliminate Plaintiff's specific managerial position as unnecessary because, unlike the other Senior Development Managers, Plaintiff did not have enough projects and products. *Id.* Defendant also points to Forbis' deposition testimony stating that Plaintiff's termination was part of a reorganization when "[a]ll of the responsibility had been moved out from under [Plaintiff]" and "it became apparent we don't have a position for

---

[4]Plaintiff disputes Defendant's ability to raise Plaintiff's alleged performance problems as a reason for his termination. Doc. 48, Resp. at 7-8. However, the only mention of performance by Defendant relates to Plaintiff's ADEA reassignment claim, and not his termination claim. Therefore, the alleged issue of performance, to the extent Defendant even raises such a problem, is not material to the termination claim.

[Plaintiff] anymore." Doc. 32-13, App. at 136 (Forbis Dep.). Westby also provided deposition testimony that she believed that Plaintiff's termination was due to a reduction in force. Doc. 32-14, App. at 154.

Plaintiff does not challenge Defendant's evidence in support of its position that a reduction in force and job elimination occurred. Doc. 48, Resp. at 7-8. The Court concludes that Defendant has satisfied its burden of producing evidence of a legitimate, nondiscriminatory reason for terminating Plaintiff: that Plaintiff's position was no longer justified given the small number of products under his purview and the small number of people reporting to him. *See EEOC v. Tex. Instruments*, 100 F.3d 1173, 1181 (5th Cir. 1996) (holding that "a reduction in force . . . is itself a legitimate, nondiscriminatory reason for discharge"); *Bourgeois v. Miss. Valley State Univ.*, No. 12-60425, 2013 U.S. App. LEXIS 783, at *5 (5th Cir. Jan. 11, 2013) (same); *Tyler v. La-Z-Boy Corp.*, No. 12-60327, 2013 U.S. App. LEXIS 363, at *13-14 (5th Cir. Jan. 4, 2013).

C.     *Pretext*

Under *McDonnell Douglas*, the burden now shifts back to Plaintiff to demonstrate that Defendant's purported reason of job elimination is mere pretext for a discriminatory motive in terminating Plaintiff. *See Jackson*, 602 F.3d at 378.

In his Response, Plaintiff offers numerous arguments in support of pretext, but commingles those arguments as they relate to his reassignment and termination claims. Because the Court analyzes only the termination claim at this stage, some of Plaintiff's arguments related to performance and reassignment are immaterial. The Court will, however, attempt to address each relevant argument of pretext.

- 15 -

i.      False Reasons for Termination

Plaintiff first argues that Defendant's reason for terminating him is pretext because it is false. Doc. 48, Resp. at 8-10. Specifically, Plaintiff disputes that he was "eliminated" rather than "replaced," and complains that Defendant's description of his position as "eliminated" is mere semantics. *Id.* at 8-9. Plaintiff himself, however, is arguing only labels and not facts. Defendant's stated reason for Plaintiff's termination is that Plaintiff's position was no longer justified because Plaintiff was managing only two products and six people.  Doc. 32-5, App. at 18-19 (Moses Aff.). Plaintiff does not dispute these facts nor provide any evidence to show that his position *was* justified with the limited responsibilities remaining beneath his management. As such, Plaintiff does not actually argue that Defendant's reason for terminating him is false, merely that it's label for his termination is inaccurate.

Plaintiff additionally argues that Defendant's statement that it planned to give Plaintiff co-management with Moran over the new Vertex Xperience project was false. Doc. 48, Resp. at 9, 17-20. Plaintiff alleges that it would not have made sense for Plaintiff to ever have been considered as a co-manager on that product, given that Moran had been working on the project previously and given that the employees on the project would need to report to Moran. *Id.* at 17. Plaintiff also contends that Moses' statements regarding resources for Vertex Xperience were false and demonstrate that "[t]he reason given for extending the performance improvement plan was pretext." *Id.* at 18. It is unclear how the veracity of the plans for Vertex Xperience weigh on whether Plaintiff's job was no longer necessary when he was ultimately not assigned to that project. Moreover, the issue is not whether Plaintiff's performance improvement plan or its extension were false or constitute pretext, but rather whether Defendant's reason for terminating Plaintiff was pretext.

In sum, Plaintiff has not disputed that Defendant's reason for terminating him was false.

ii.      Performance

As noted above, much of Plaintiff's argument at the pretext stage relates to his purportedly good performance, product success, and high skills and qualifications and the lack of qualifications of the two individuals, Blevins and Harvey, who were reassigned some of Plaintiff's products while Plaintiff was still an employee of Defendant. Doc. 48, Resp. at 10-17. Although Defendant disputes each of these items in its Reply, *see* doc. 61, Reply at 7-13, Defendant does not raise Plaintiff's performance or qualifications as a reason for terminating Plaintiff with respect to the ADEA termination claim. Plaintiff does not argue that the dispute regarding his performance is relevant other than arguing the inaccuracies of Defendant's alleged negative characterization of Plaintiff's performance. The performance-based issues appear to be related only to the reassignment claim and not the termination claim, and the Court has detected no argument from Plaintiff that his performance is otherwise relevant to showing pretext on the termination claim. Indeed, Plaintiff himself admits and actually argues that performance should not be an issue with regards to the termination claim. Doc. 48, Resp. at 7 (explaining that Westby, Moses, and Forbis each testified that performance was not a reason for terminating Plaintiff and citing doc. 49, App. at 17 (Westby Dep.), 34 (Forbis Dep.)). Thus, the performance discussion appears irrelevant to the termination claim. This includes Plaintiff's argument that Defendant failed to follow its own policies when it did not "allow" Plaintiff to succeed. Doc. 48, Resp. at 16. Further, although Plaintiff states that he is more qualified than his coworkers, Plaintiff has not presented objective evidence to create a dispute of fact regarding whether Rader and Greenhaw were "clearly less qualified" than him. *See Tex. Instruments*, 100 F.3d at 1181, 1184 (stating that in reduction-in-force cases an employee's qualifications are "less

relevant" and raise a fact issue only if the employee shows that he "was terminated in favor of younger, *clearly less qualified* individuals" (emphasis added)). The Court will not envision relevant arguments related to performance where none are presented.

 iii. Age

 Plaintiff next contends that, in April 2011, Moses asked Plaintiff how old he was. Doc. 48, Resp. at 22. Moses does not recall asking Plaintiff his age and alleges that he never knew Plaintiff's age.[5] Doc. 32-17, App. at 333 (Moses Dep.); doc. 32-5, App. at 19 (Moses Aff.). "Where a plaintiff offers remarks as circumstantial evidence alongside other alleged discriminatory conduct, . . . we apply a more flexible  two-part test." *Reed v. Neopost U.S., Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000)). "In that circumstance, a plaintiff need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Id.* (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 583 (5th Cir. 2003)). Even assuming that Moses did ask Plaintiff's age, such a comment is not sufficient evidence of pretext. *See* doc. 61, Reply at 7. Asking a person's age, without more, is insufficient to demonstrate a discriminatory animus, and Plaintiff has introduced no further context indicating the existence of discriminatory animus in this statement. Accordingly, Moses' alleged question is not sufficient to demonstrate pretext.

---

[5]Defendant provides evidence that neither Moses nor Harvey knew Plaintiff's age or considered his age when making the decision to terminate Plaintiff. Doc. 32-4, App. at 7-8 (Forbis Aff.); doc. 32-5, App. at 18-19 (Moses Aff.). Westby stated that age was never mentioned to her in conjunction with the decision to terminate Plaintiff. Doc. 32-14, App. at 172 (Westby Dep.).

iv.    Moses' Credibility and Statements to Harvey

Plaintiff next provides evidence that Moses is not a credible person. Doc. 48, Resp. at 18-20 (citing doc. 49, App. at 39-40 (Greenhaw Dep.)). Plaintiff has not provided evidence to dispute any statements made by Moses or Defendant's summary judgment evidence from Moses, and arguing that a person is generally not credible does not demonstrate that the employer's reason for terminating an individual is false. *See* doc. 61, Reply at 16. Plaintiff's credibility argument is not properly before the Court at the summary judgment stage.

Plaintiff also alleges that he was told by Harvey in March 2011 that Moses was "out to get" Plaintiff. Doc. 48, Resp. at 13. Plaintiff then alleges that, in April 2011, Defendant considered a corporate reorganization involving the elimination of both Harvey's and Plaintiff's positions and the creation of a new position which would combine their job duties. *Id.* at 13-14. Allegedly, Forbis and Moses asked Harvey how he would feel about losing his job and applying for the new position, but they did not ask the same of Plaintiff. Ultimately, Defendant did not go through with that reorganization. Doc. 61, Reply at 13. Besides the fact that these statements may be inadmissible hearsay, neither of these conversations–that Moses was out to get Plaintiff or that only Harvey was asked about applying for a new job–relate to Plaintiff's age or are otherwise sufficient to show pretext. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 656 (5th Cir. 1996) (applying four-part test and noting that a comment that staff were "getting long in the tooth" and that physical appearance should play a role in hiring did not show age discrimination because the "comments arguably do not even reflect age discrimination").

v.      Systematic Reduction

Plaintiff further contends that Defendant engaged in a systematic reduction of his responsibilities in order to ultimately terminate him on the basis of his age. Doc. 48, Resp. at 2, 6, 18. In support, Plaintiff again points the Court to Defendant's reassignment of his projects to Blevins and Harvey during Plaintiff's employment, the decision to have Moran manage Vertex Xperience by himself, and the reassignment of Plaintiff's products to Rader and Greenhaw after his termination. *Id.* at 18. Plaintiff cites several cases regarding systematic reduction of responsibilities, *see id.* at 6, but most of those cases do not analyze that issue and the others are distinguishable. To wit, *Plotke* merely mentions that courts have considered the systematic transfer of duties as giving rise to an inference of discriminatory motive and cites *Chertkova*, but systematic transfer was not an issue in *Plotke*. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996); *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005). *Chertkova* similarly merely mentions that possibility, which was not at issue in that case, and cites *Gallo v. Prudential Residential Servs., Ltd. Pshp.*, 22 F.3d 1219, 1225 (2d Cir. 1994). *Gallo*, however, analyzed the systematic transfer of duties at the *prima facie* stage but still required the plaintiff to present separate evidence of pretext. Additionally, *Chambers* merely mentions that the sequence of events leading up to termination may be relevant, citing *Ostrowski*; yet, the chain of events in *Ostrowski* all related to age-based issues. *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994); *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 183-84 (2d Cir. 1992). Finally, *Palasota*,[6] which did involve a systematic reduction in an employee's duties, also involved the employer's systematic replacement of older salespersons with younger ones in order to

_____

[6]The pincite Plaintiff gives to *Palasota* does not include any discussion relevant to the proposition for which it was cited.

give the company a more youthful image and other evidence of age discrimination. *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 487 (5th Cir. 2007) (involving jury trial on liability). In this case, Plaintiff simply has no evidence to create a dispute of fact to show that the reassignment of his duties which allegedly ultimately led to his elimination demonstrates that Defendant's stated reason for terminating Plaintiff is pretext.

    <u>vi.</u>    <u>Other Arguments</u>

Plaintiff responds to Defendant's arguments on the limitations issue, his applications for other positions with Defendant, his rejection of the severance agreement in favor of retaining his legal claims, and rejecting the same actor inference. *See* doc. 48, Resp. at 20-23. Because the Court does not rely on any of those arguments from Defendant in deciding summary judgment, the Court need not analyze Plaintiff's responses to those matters.

The Court concludes that Plaintiff's case suffers from a lack of evidence of pretext or evidence otherwise showing a genuine issue of material fact that Plaintiff's age was the "but-for" cause of his termination. *See Barber v. Shaw Group, Inc.*, 243 F. App'x 810, 812 (5th Cir. 2007). Accordingly, the Court **GRANTS** summary judgment to Defendant on Plaintiff's ADEA termination claim.

D.    *Objections to Evidence*

Plaintiff has filed a Motion to Strike (doc. 45), seeking to strike some of Defendant's summary judgment evidence on the basis that the evidence includes hearsay, statements not based on personal knowledge, and conclusory statements. The Court has reviewed Plaintiff's Motion, but concludes that it did not rely upon any of the objected-to statements *in deciding the merits* of Defendant's Motion for Summary Judgment. Although the Court cites Forbis' and Moses' affidavits related to age

not being a factor in their decisions, the Court relies on those statements only to the extent they reflect the affiant's thoughts or motivations and not to the extent the statements are meant to indicate the thoughts or motivations of others. The same is true for Westby's deposition testimony, to the extent it reflects her understanding of Plaintiff's termination. Accordingly, the Court **FINDS AS MOOT** the Motion to Strike (doc. 45).

## IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment (doc. 32). The Court **FINDS AS MOOT** Plaintiff's Motion to Strike (doc. 45).

**SO ORDERED.**

**SIGNED: June 17, 2013.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE