# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-10719

United States Court of Appeals
Fifth Circuit
**FILED**
August 11, 2014
Lyle W. Cayce
Clerk

KENT KEAN,

    Plaintiff – Appellant

v.

JACK HENRY & ASSOCIATES, INCORPORATED,

    Defendant – Appellee

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
SEP 2 5 2014
U.S. DISTRICT COURT
By _____
Deputy

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CV-1159

Before HIGGINBOTHAM, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

    Kent Kean worked at Jack Henry & Associates ("JHA") as a senior manager responsible for nine projects. One of those projects—OnBoard—struggled under Kean's supervision. After failing to meet specified goals, JHA transferred some of Kean's projects to other employees to allow Kean to focus on bringing OnBoard up to speed. When OnBoard continued to lag behind, JHA transferred OnBoard, among other projects under Kean's supervision, to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

another employee. Now left with two projects, Kean remarked to JHA, "I may regret saying this, but the new .Net Xperience resources should report to [another employee]." Because there was no need to have a senior manager responsible only for one project and a small portion of another, JHA eliminated Kean's position. Following his termination, Kean sued JHA for age discrimination, arguing that he was terminated because of his age and that JHA transferred his projects because of his age. After denying two discovery requests and denying Kean's Rule 56(d) motion for a continuance of summary judgment, the district court granted summary judgment for JHA. We AFFIRM.

## FACTUAL BACKGROUND

Kent Kean began his career at Jack Henry & Associates in 1999 as a business analyst. Kean held the position of senior manager from 2003 until JHA terminated him in 2011. Kean was 53 years old when terminated.

### A. Kean's Responsibilities as Senior Manager

In his role as senior manager, Kean managed five employees (Cornell, Harvey, Lowery, Stevenson, and Blevins) and was responsible for nine projects (InTouch, iTalk, PassPort, Streamline, OnBoard, Argo, OnTarget, Vertex, and Core Director Teller). In 2007, the director of software development, Ron Moses, became Kean's supervisor. In 2008, Moses reviewed Kean's performance positively, but noted problems with OnBoard. Specifically, Kean was directed to, among other things, "get OnBoard R&D group stabilized and operating under a normal cycle" and "deliver the first phase of OnBoard Loans in Silverlake" in the upcoming year. Kean testified that these directives were not accomplished in the next year.

### B. The OnBoard Project Continues to Struggle

OnBoard repeatedly missed scheduled deadlines under Kean's management. On April 3, 2008, the targeted delivery date for OnBoard was the third quarter of 2008, and Moses testified that "all development milestones

2

on this project were in warning (indicating milestone activity was not meeting scheduled dates) or off target status." Kean "was never able to push the product over the edge into production under his direction." In Kean's 2010 performance review, he received more criticism for his management of the OnBoard project. Moses dropped Kean's performance rating and moved the target date for delivery from November 1, 2009, to September 15, 2010.

### C.   Moses Begins Reassigning Kean's Projects

In 2010, Moses and Chief Technology Officer, Mark Forbis, promoted Aaron Blevins (age 35) from development manager to senior manager in order to take over InTouch, ITalk, and PassPort. This promotion "was structured to allow Mr. Kean the ability to provide more management focus on the critical products of ArgoKeys, OnBoard, Streamline, Vertex, and Core Director Teller." After Blevins took over PassPort, the project began improving. Blevins addressed employee issues that were previously unresolved by Kean and instituted a new client updating system.

### D.   Kean and Moses Contemplate Changes on OnBoard

In 2010, Kean updated Moses on the OnBoard project but did not include any estimates for completing an upcoming OnBoard Deposit project. Kean subsequently emailed Moses explaining that the Consumer Real Estate on the OnBoard project was completed, but Moses later learned that it was not. The Real Estate delivery for the project missed the January 31, 2011, deadline and was instead delivered on April 1, 2011. In February 2011, Moses suggested that Kean make personnel changes to the OnBoard project.

### E.   Moses and Forbis Reassign OnBoard to Harvey

In May 2011, Moses met with Kean and placed him on a Performance Improvement Plan ("PIP"). Kean acknowledged he had lagged behind on the OnBoard project. Around this time, JHA promoted Harvey to Senior Manager of Platform Solutions and assigned him ArgoKeys, OnBoard, and Streamline,

3

and left Kean to manage Vertex and Core Director Teller. Neither Kean's pay nor title were reduced as a result. After Kean's replacement, Moses noted a substantial improvement in the OnBoard project.

In June 2011, Kean's PIP was extended to September 2011 because of failings in Vertex. In September 2011, Moses, Kean, and Development Manager Ben Moran, met about Vertex. In this meeting, Kean informed Moran and Moses that "I may regret saying this, but the new .Net Xperience resources should report to Ben." Because there was no need to have a senior manager responsible only for the standard Teller releases of Vertex and Core Director Teller, Moses made the determination to eliminate Kean's position. Forbis agreed with Moses's decision.

## F.   JHA Terminates Kean

Human Resources Representative Faith Westby and Moses met with Kean and informed him that he was terminated on September 23, 2011. Kean's position was eliminated, and his remaining responsibilities were absorbed by three other individuals who continued to perform their own duties in addition to Kean's. Moses encouraged Kean to look for another position within JHA.

## G.   Proceedings in the District Court

Kean sued JHA in 2012, alleging that his termination violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621. On June 17, 2013, the district court granted JHA's motion for summary judgment. Kean filed a notice of appeal of the summary judgment order on July 8, 2013, and filed an amended notice of appeal to include the district court's order overruling his objections to the Magistrate Judge's discovery order on July 10, 2013. On appeal, Kean challenges the district court's (1) denial of his discovery requests, (2) denial of his Rule 56(d) motion to deny summary judgment, and (3) grant of summary judgment for JHA.

## DISCUSSION

### A.  Denial of Kean's Discovery Requests

Kean challenges the district court's refusal to order production of Ron Moses's performance appraisals from 2009–2011 and refusal to conduct an *in camera* review of a redacted email that JHA produced.

We "review a district court's discovery rulings, including the denial of a motion to compel, for abuse of discretion," *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817 (5th Cir. 2004), and will not reverse such rulings "unless arbitrary or clearly unreasonable," *McCreary v. Richardson*, 738 F.3d 651, 654 (5th Cir. 2013) (internal quotation marks omitted). "The standard of review poses a high bar; a district court's discretion in discovery matters will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 469 (5th Cir. 2009) (internal quotation marks omitted). "This court will disregard a district court's discovery error unless that error affected the substantial rights of the parties," and "[t]he burden of proving substantial error and prejudice is upon the appellant." *Id.* (internal quotation marks omitted).

### 1.  Moses's Performance Appraisals from 2009–2011

Kean originally requested Moses's performance appraisals from 1999 through the present. The Magistrate Judge found that Moses's performance appraisals were irrelevant to Kean's case from the time Moses became Kean's supervisor in 2008 because they had "different job titles, responsibilities, and supervisors from 2007 to 2011." But, the judge continued, for some period of time before 2007, Moses and Kean shared the same or similar position. Accordingly, the Magistrate Judge concluded that "the time frame requested by Plaintiff [was] too broad and must be limited" to two years before and the one year after Moses became Kean's supervisor. The Magistrate Judge also ordered JHA to produce "any documents or communications found in Mr.

No. 13-10719

Moses's performance appraisal files that relate to Plaintiff and to the decision to terminate Plaintiff, including any decisions to lessen Plaintiff's role within the company or otherwise demote him." The district court overruled Kean's objections and affirmed the Magistrate Judge's order.

Kean argues that the lower courts abused their discretion because "Moses's performance appraisals for the years 2009 through at least 2011 are also relevant to pretext" and are also "relevant to determine the veracity of Forbis's statements regarding [Moses's] appraisals and to compare Moses's objectives and ratings regarding the OnBoard product and other products to Kean's objectives and ratings on Kean's products."

Kean's first argument—that Moses's later appraisals are relevant to showing pretext—is belied by the Magistrate Judge's order for JHA to produce "any documents or communications found in Mr. Moses's performance appraisal files that relate to Plaintiff and to the decision to terminate Plaintiff, including any decisions to lessen Plaintiff's role within the company or otherwise demote him." This production order was unbound by the 2005–2008 timeframe limiting the disclosure of Moses's performance appraisal. Accordingly, the Magistrate Judge had already ordered any material in Moses's 2009–2011 performance appraisals that related to Kean's allegedly pretextual termination.

Kean's second argument—that the appraisals are necessary to show that Kean was being singled out for the failures of OnBoard—is unavailing because Kean and Moses had different positions with respect to OnBoard at the time. *See, e.g., Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007) ("In disparate treatment cases, the plaintiff-employee must show 'nearly identical' circumstances for employees to be considered similarly situated."); *Gilbert v. Brookshire Grocery Co.*, 354 F. App'x 953, 954 (5th Cir. 2009) (unpublished) ("In order for employees to be considered similarly situated, an employee

6

alleging discrimination must show that the employees' circumstances, including their misconduct, were nearly identical."). Accordingly, Moses's performance appraisals from the time before he became Kean's supervisor are irrelevant to Kean's *prima facie* case. For those same reasons, appraisals of two differently situated employees with different responsibilities would not be probative of pretext.

While the discovery rules are liberally tilted towards production, "[this] rule does not, however, permit a plaintiff to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978). "Moreover, courts have recognized that Title VII plaintiffs do not have an unlimited ability to delve into their employers' policy and personnel records, even when they have alleged a pattern of discrimination." *Smith v. Just for Feet, Inc.*, No. Civ. A. 98–2445, 1999 WL 447454, at *2 (E.D. La. 1999) (Wilkinson, M.J.). Neither the district court nor the Magistrate Judge abused their discretion by limiting Kean's requests to three potentially relevant years of Moses's performance appraisals and any of Moses's performance reviews relating to Kean's termination or reassignment of his duties.

### 2. Redacted Email from Moses to Forbis

Kean next argues that the district court erred by refusing to review a redacted paragraph of an email from Moses to Forbis *in camera*. Moses sent the email on September 16, 2011—one week before Kean's termination. The email is in large part about Kean. Under the heading "Kent Kean" there are five paragraphs; all four unredacted paragraphs discuss Kean's future with JHA, possible opportunities for Kean, discussions with HR about Kean's pending termination, and discussions with Kean about a certain project. Nonetheless, JHA claimed the redacted paragraph is not relevant. While JHA agreed to submit the unredacted document for *in camera* inspection, the

7

Magistrate Judge found *in camera* review "neither necessary nor required" because Kean "put forth no evidence to support [his] theory that the paragraph contains information related to Plaintiff." Instead of reviewing the document *in camera*, the Magistrate Judge ordered JHA to either provide a sworn declaration from Moses "stating that the redacted paragraph contains no information related to Plaintiff or would be otherwise relevant to this case" or produce an unredacted copy. Moses filed a sworn declaration. The district court overruled Kean's objections. Kean argues that this was an abuse of discretion because the redacted paragraph was relevant and not privileged.

Appellate review of discovery rulings is exceedingly deferential, and this Court "will affirm such decisions unless they are arbitrary or clearly unreasonable." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000). Moreover, "[t]he decision whether to conduct an In camera inspection is wholly within the discretion of the district court." *Alford v. CIA*, 610 F.2d 348, 349 (5th Cir. 1980) (citing 5 U.S.C. § 522a(g)(3)(A)). In an abundance of caution, we conducted our own *in camera* review of the redacted paragraph. *See Childers v. Pumping Sys., Inc.*, 968 F.2d 565, 572 (5th Cir. 1992) (affirming state court's ruling based on our own *in camera* review of sealed document). We find that the redacted paragraph does not even mention Kean or his projects and thus was not relevant to the reassignment of Kean's duties or his termination. Accordingly, even if the district court did err in refusing *in camera* review, such error did not affect Kean's substantial rights and is appropriately disregarded. *See Marathon Fin. Ins.*, 591 F.3d at 469.

In light of the permissive standard of review, as well as our own review, we uphold the district court's refusal to review the redacted paragraph *in camera*.

B. **Denial of Rule 56(d) Motion to Deny Summary Judgment**

Kean further asserts that the district court abused its discretion in denying his motion for denial of summary judgment under Rule 56(d), when Kean needed more time to review documents JHA belatedly produced.[1]

We review a denial of a Rule 56(d) motion for abuse of discretion. *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013). Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Rule 56(d) motions are "broadly favored and should be liberally granted." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010). The Rule 56(d) movant "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* If the requesting party "has not diligently pursued discovery, however, she is not entitled to relief" under Rule 56(d). *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001).

As stated above, Rule 56(d) applies only when a "nonmovant shows by affidavit or declaration, that, for specified reasons, it cannot present facts essential to justify its opposition." Here, Kean argues that that he (1) did not have discovery in time to depose certain witnesses and (2) did not have time to

---

[1] JHA argues that Kean has not properly appealed the district court's Rule 56(d) ruling because Kean did not notice the district court's May 14, 2013 Order in either its notice of appeal or amended notice of appeal. Kean argues that he rehashed his Rule 56(d) motion in a supplemental response to summary judgment. The district court in its order granting summary judgment again denied Kean's motion. Kean did notice appeal of the summary judgment order, which incorporates the Rule 56 order.

review the voluminous amounts. As to the first argument, if it is true that these documents had "significant probative value," then they likely would be sufficient to create a genuine issue of material fact on their own. Kean would therefore not have shown that "specified *facts*, susceptible of collection within a reasonable time frame, probably exist" or that "the emergent facts, if adduced, [would] influence the outcome of the pending summary judgment motion." *Raby*, 600 F.3d at 561 (emphasis added). Regardless, the specific documents that Kean relies on in support of his appeal of the Rule 56(d) order are documents Kean utilized to attempt to defeat summary judgment.

As to Kean's ability to review the voluminous production, the district court exercised its discretion under Rule 56(d)(3) by extending Kean's deadline to respond to the Motion for Summary Judgment by two weeks and instructing that "should Plaintiff receive additional discovery that he believes is *material* and *relevant* to the issues on summary judgment, he may file a motion for leave to file a supplemental brief and appendix at such time." The district court's continuance, combined with the option of supplementing his briefing, mitigates any concern about Kean's ability to review the belatedly produced documents.

"A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (internal quotation marks omitted). Hence the district court did not clearly abuse its discretion when it declined to deny summary judgment under Rule 56(d) and utilized Rule 56(d)(3) to mitigate any prejudice to Kean arising from JHA's untimely productions.

C. **Grant of JHA's Motion for Summary Judgment**

Finally, Kean maintains that the district court erred in granting JHA's motion for summary judgment and dismissing his ADEA claim against JHA.

We "review a grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013).

"Under the ADEA, it is unlawful for an employer 'to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 349–50 (5th Cir. 2005) (quoting 29 U.S.C. § 623(a)(1)) (internal quotation marks omitted). Because Kean relies on circumstantial evidence of discriminatory animus, the burden-shifting analysis of *McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973), applies to his claims. *Machinchick*, 398 F.3d at 350.

Under this framework, Kean carries the initial burden of establishing a prima facie case of age discrimination. *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013). To establish a prima facie case, "a plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (internal quotation marks omitted).

If Kean establishes a prima facie case, "the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for terminating employment." *Miller*, 716 F.3d at 144.

"If the employer satisfies this burden, the burden shifts back to the employee to prove either that the employer's proffered reason was not true—but was instead a pretext for age discrimination—or that, even if the employer's reason is true, he was terminated because of his age." *Jackson*, 602

F.3d at 378 (citing *Gross v. FBL Fin. Servs., Inc.*, 577 U.S. 167, 180 (2009)). "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence. But a reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown both that the reason was false, and that discrimination was the real reason." *Holliday v. Commonwealth Brands, Inc.*, 483 F. App'x 917, 921 (5th Cir. 2012) (unpublished) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)) (internal quotation marks omitted). The Supreme Court has clarified that ultimately, "[t]o establish a disparate-treatment claim under the plain language of the ADEA . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross*, 577 U.S. at 176.

We assume *arguendo* that Kean established a prima facie case under both of his theories of ADEA liability: (1) JHA discriminated against him by reassigning his projects to younger employees because of his age, and (2) JHA terminated him because of his age and replaced him with younger employees.[2] Both parties agree that JHA presented legitimate non-discriminatory reasons both for reassigning some of Kean's projects to Blevins and Harvey and for ultimately terminating Kean. Hence we limit our inquiry to whether JHA's stated reasons for reassigning his projects and for terminating him were a pretext for age discrimination. *See, e.g., Golbert v. Saitech, Inc.*, 439 Fed. App'x 304, 306 (5th Cir. 2011) (analyzing pretext after assuming *arguendo* that plaintiff made out a *prima facie* case of discrimination, and finding defendant offered a nondiscriminatory reason for a termination); *Patel v. Midland Mem'l Hosp. and Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002).

---

[2] Because we resolve this case straightforwardly with the following analysis, we do not reach the questions of (1) whether reassignment of projects to younger employees constitutes an adverse employment action, and (2) whether an employee's position must be replaced by a new hire to constitute an adverse employment action under ADEA.

No. 13-10719

## 1. Reassignment of Projects

JHA offers legitimate, nondiscriminatory reasons for reassigning some of Kean's projects to Blevins and Harvey. Specifically, Kean's performance on the OnBoard project resulted in delays and the need for management changes. Initially, this required assigning some of Kean's projects to Blevins so that Kean could "provide more management focus on the critical products of ArgoKeys, OnBoard, Streamline, Vertex, and Core Director Teller." Eventually, Moses transferred OnBoard to Harvey, believing he would do a better job with the product. JHA testified that Kean's former projects began improving after transferring them to Harvey and Blevins.

### a. Transfer of Project to Blevins

Kean argues, however, that JHA's reasons for reassigning some of his projects to Blevins were pretext for age discrimination because (1) he was experienced and performing well, (2) he was more experienced than Blevins, (3) he was not the problem with OnBoard, and (4) he had not experienced problems with his other projects. None of these arguments squarely addresses JHA's proffered legitimate nondiscriminatory reason for transferring projects to Blevins, namely that OnBoard was struggling, and that with less projects under his supervision Kean could focus more on OnBoard.

Moses testified, for instance that "OnBoard had been struggling since 2009, and I, as Mr. Kean's supervisor, felt that I had to make a personnel change in order to prevent further delays on the OnBoard project." OnBoard, Moses explained, "struggled for years without delivery despite the significant financial investment being made by Jack Henry. From 2008 to 2011, JHA invested over $6,000,000 in personnel costs . . . into the OnBoard lending project." JHA lost $700,000 from cancelled and terminated contracts due to the delayed OnBoard project.

Kean's arguments for pretext can be reduced to his general disagreement with JHA's assessment of his performance. This Court has held that "[m]erely disputing [an employer's] assessment of [a plaintiff's] work performance will not necessarily support an inference of pretext." *Evans v. City of Hous.*, 246 F.3d 344, 355 (5th Cir. 2001) (alterations in original). While Kean may have had a history of high performance and success on other projects, he does not dispute that the OnBoard project suffered from numerous delays under his supervision. That Kean was more experienced than Blevins also does not undercut JHA's reasoning that Kean needed more time to focus on OnBoard. Finally, Kean's assertions that the struggles with OnBoard "were group problems" does not impact the credibility of JHA's decision to give him more time to focus on the project. *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002) ("Merely disagreeing with an employer's negative performance assessment is insufficient to show pretext.").

Because Kean's arguments do not undermine the credibility of JHA's stated reasons for transferring his projects to Blevins, Kean has not created a fact issue as to pretext. *See Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("Employment discrimination laws are not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . transform the courts into personnel managers. . . . Management does not have to make proper decisions, only non-discriminatory ones." (internal quotation marks omitted)).

### b. Transfer of Projects to Harvey

Kean argues that JHA's stated reasons for transferring his projects (including OnBoard) to Harvey are pretext for age discrimination because (1) Kean didn't cause the problems with OnBoard, (2) Forbis and Moses considered consolidating Kean's and Harvey's positions into one position, (3) implementation of a performance improvement plan was intended to prevent Kean from retaining his position, (4) Harvey's plan for OnBoard is similar to

14

Kean's, and (5) Moses asked Kean what his age was around the same time that his projects were transferred.

Again, most of Kean's arguments do not directly contradict JHA's reasons for reassigning his projects, including OnBoard, to Harvey. JHA reassigned these projects so that "Mr. Kean [could] focus specifically on Jack Henry's Teller products and drive the upcoming Vertex Xperience project" as well as "to provide new management direction for the OnBoard Lending project." The only new argument Kean presents that would be relevant to pretext is Moses's asking Kean what his age was around the time of his transfer. Moses's question to Kean, however, does not reflect discriminatory animus. As discussed in more detail below, Moses's question does not create a fact issue on pretext for either the reassignment or termination.

### 2. Termination

JHA maintains that it terminated Kean's position because the department was to be reorganized and his position was to be eliminated. Specifically, Moses made the decision after a September 2011 meeting between Moses, Kean, and Development Manager Ben Moran, concerning Vertex. Kean informed Moran and Moses that "I may regret saying this, but the new .Net Xperience resources should report to Ben." In light of Kean's suggestion, Moses realized that there was no need to have a senior manager responsible only for the standard Teller releases of Vertex and Core Director Teller. Accordingly, Moses made the determination to eliminate Kean's position. Kean does not dispute that this is a legitimate, nondiscriminatory reason.

Kean primarily argues that JHA's reasoning for terminating him was pretextual because JHA terminated him for having too few responsibilities, and that "Kean had too few responsibilities because JHA had reassigned them to younger employees; and JHA does not have credible reasons for reassigning the positions to the younger employees." Kean's argument necessarily assumes

the validity of JHA's proffered reason for his termination: that it no longer needed to have a senior manager responsible for only a few projects. As the district court noted, "Plaintiff does not . . . provide any evidence to show that his position *was* justified with the limited responsibilities remaining beneath his management." Accordingly, Kean's attack on the allegedly pretextual reassignments does not refute the validity of JHA's proffered reasons for termination. Instead, Kean's arguments about the reassignment of his projects are more relevant to his reassignment claim—which, as discussed above, lacks merit.

Kean argues that Moses's inquiry as to his age and Harvey's statement that Moses was "out to get" Kean serve as circumstantial evidence of pretext. This Court has previously said that:

> Where a plaintiff offers remarks as circumstantial evidence alongside other alleged discriminatory conduct, however, we apply a more flexible two-part test. In that circumstance, a plaintiff need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker.

*Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (internal citations omitted).

Both comments fail under *Reed*. Moses asked Kean about his age on April 19, 2011—a couple of months before Kean's termination in September 2011. Further, the question is facially-neutral; it does not reflect *discriminatory* animus or animus at all. See *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 352 (5th Cir. 2007) (comment not evidence of age discrimination because "Martinez made no mention of replacing older employees with younger recruits or directly hiring younger employees into leadership positions" and collecting cases of discriminatory comments); cf. *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 n.7 (5th Cir. 1993) (discussion of retirement package

during termination including comment that "I hope when I get to your age, somebody does the same thing for me" were facially-neutral remarks); *id.* at n.7 ("One district court has stated poignantly, 'To assert that an employer is incapable of ever mentioning or noting an employee's age in a discharge situation would be to work the absurd result that an employer could not discuss severance packages and pension calculations with a departing employee.'" (quoting *Perry v. Prudential-Bache Sec.*, 738 F. Supp. 843, 853 (D.N.J. 1989)).

Equally, Harvey's comment that Moses was "out to get" Kean does not relate to Kean's age. Additionally, the statement is by Harvey, not Moses, who is the relevant decisionmaker. *Reed*, 701 F.3d at 441. Both of these comments are insufficient to show the reason given was pretext for *age* discrimination. Indeed, Kean concedes that "[t]he statements may not be sufficient in themselves," and he does not provide authority for the proposition that the two statements combined create an issue of fact on pretext.

In sum, aside from Moses's inquiry into Kean's age and the fact that Kean's responsibilities were assumed by younger employees, there is nothing to combat JHA's non-discriminatory reason for reassigning Kean's projects and subsequently terminating him: under Kean's supervision, the OnBoard project floundered and, after Kean's projects were reassigned, Kean's position was eliminated as superfluous. *See Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902–03 (5th Cir. 2000) ("A mere scintilla of evidence of pretext does not create an issue of material fact in all cases."). Kean has not created a fact issue as to pretext, and therefore cannot meet his ultimate burden to "prove that age was the 'but-for' cause of the employer's adverse decision." *Gross*, 557 U.S. at 176; *see also Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 41 (2d Cir. 2012) (unpublished) ("On this record, we are compelled to conclude . . . that no reasonable juror could find that LVI's nondiscriminatory reason for

terminating Fried was a pretext for age discrimination and that 'but for' Fried's age, he would not have been terminated.").

## CONCLUSION

For the above stated reasons, we AFFIRM the district court's denial of his discovery requests, denial of his Rule 56(d) motion to deny summary judgment, and grant of summary judgment for JHA.